May it please the court, I'm Victoria Weatherford, pro bono counsel for plaintiff appellant Edward Furnace. I'd like to reserve two minutes. The district court ignored my client's sworn testimony when I granted summary judgment to the defendants that he was subjected to a burning pepper spray in an unprovoked and unjustified attack. Is the length of time key as to how long the pepper spray continued? We believe, Your Honor, that this court can decide without reaching the issue of for how long and for the quantity of pepper spray that Mr. Furnace was subjected to. Under Lully v. County of Orange and Felix v. McCarthy, because Mr. Furnace presented no threat and no reasonable officer could have perceived his actions to have been a threat that would have justified the use of force, the use of any force against Mr. Furnace would have been an unconstitutional use of excessive force against him. And therefore, if this Court does find that Mr. Furnace presented no threat, at least under his version of events, that he raised a genuine dispute of material fact about that, then this Court doesn't have to reach the issue of the quantity of pepper spray or about the fact that the officers in this case violated their own prison policies. But you do have a perhaps stronger case that the unresolved issue of fact is the amount of pepper spray used rather than whether that was excessive, rather than whether using it at all was excessive force, don't you? We don't believe that, Your Honor. We believe that Mr. Furnace has alleged a genuine dispute of material fact that he did not pose any threat such that the use of any force against him would have been constitutionally excessive. I thought I was throwing you a softball. I mean, I agree with you, of course, Your Honor, that under the circumstances of this case and using the Hudson balancing factors, again, Mr. Furnace has raised a genuine dispute of material fact that not only defeats summary judgment, but that would also defeat qualified immunity in this case. The officers in this case pepper sprayed Mr. Furnace for approximately one minute in his face, upper torso, and stomach, which resulted in burns to his body, which lasted for several days, along with other injuries. In addition, the officers in this case violated their own prison policies when they pepper sprayed Mr. Furnace without warning. The records repeat with evidence here Mr. Furnace's own sworn testimony that the force in this case was constitutionally excessive as well. Your primary point is that the judge just decided this on the wrong basis, that you can't have a summary judgment when you have these material issues of fact. Go ahead. I didn't mean to interrupt you, Your Honor. I was just going to say it seems to me when you look at your client's statement, he suggests he was given no warning, which would have been contrary to the prison policy. He thought it was unprovoked. The second guy's attack was unprovoked. And what was his testimony about the food port, that he had originally put his hand there, but then he took it off? It was conflicting with what the officer said, right? Yes, it was, Your Honor. And the district court accepted what the officer said when it decided to grant qualified immunity. The district court actually did hold when it first analyzed whether or not he had raised a genuine dispute of material facts to defeat summary judgment, that he had raised a genuine dispute about whether or not he posed a threat. But to answer your specific question about the language that Mr. Furnace used, Mr. Furnace testified that he only put his fingertips, quote, on the bottom part of where the door is cut open for the tray slot. That's in Excerpt from Record 176 to 177. He also testified that his fingertips were, quote, on the door itself and not, quote, on the plate that's past the tray slot. That's on page 117 of his deposition, which was cited by the district court in Excerpt from Record 5, but not part of the defendant's motion to augment. It's part of our motion to augment, though. And that would be referring to the photographs as well. You got our order indicating that we granted your respective ---- Yes, I did, Your Honor. So you can see for yourselves the photographs there. So Mr. Furnace did testify that he placed his fingertips on the actual door itself and not on the tray that extended past the door. Under the policy here that the defendants are hanging their hat on is justification for pepper-spraying Mr. Furnace in violation of that own policy. He didn't violate that policy, nor did he come close to violating it. So under the ---- At least that's his story. Yes, Your Honor. And your point is that the district court was not the appropriate trier of fact. You can't do that when you have contested material facts. And so you're saying we should send it back, let the district court sort this all out. Absolutely, Your Honor. We believe that the district court improperly weighed the evidence and made a credibility determination here. It accepted the defendant's version of events, which is obviously incorrect under the summary judgment standard. It had to accept the nonmovement's version of events. Mr. Furnace had sworn testimony on this matter. That enough ---- that error alone, because it tainted the district court's qualified immunity analysis, is sufficient for this court to reverse the district court. Like I said, we'd also appreciate this court reaching the qualified immunity issue, which, like I said, we believe no reasonable officer could have believed that under the events as Mr. Furnace has testified occurred, no reasonable officer could have believed that it would have been constitutional to violate prison policies and pepper spray him for over a minute without warning. Is that true of Sullivan, too? He was not right there when Morales originally gave the food and so on. He saw, as I understand it, Morales spraying your client, and then he came up and joined in the fray. Can we ascribe to him an understanding that he was violating prison policy, since all he saw was his fellow officer spraying somebody? Do we treat him differently, in other words? No, you don't, Your Honor. And, again, this is where the district court wrongly accepted two of the defendant's versions of material disputed facts. The district court in this case, when it looked at whether or not it was going to grant qualified immunity to Officer Sullivan, the district court, again, found that Mr. Furnace was holding open the port to his cell door, and that Officer Morales warned Mr. Furnace to let go of it before pepper spraying him. Because Mr. Furnace has testified that these events did not occur, again, that's a genuine disputed material fact. According to Mr. Furnace, Officer Morales was originally the officer who was in front of him, and then Officer Sullivan also approached the cell door and began to pepper spray him. So we do believe that this court would treat Officer Morales and Officer Sullivan the same in that case. What about your equal protection claim? That doesn't really rise to the same level of credibility as your other one, does it? Well, Your Honor, the defendants at least concede for purposes of this court's decision that Officer Morales did make the derogatory remark about Muslims right outside of Mr. Furnace's cell door and immediately before denying to give him the religious, vegetarian meal to which he was entitled. So this court does have to accept for purposes of this appeal that Officer Morales did make that remark. We believe that the district court obviously erred when it completely ignored this remark for purposes of analyzing Mr. Furnace's equal protection claim. Everything that happened after Officer Morales approached Mr. Furnace at his cell door is in dispute. Do you want to save some rebuttal time? Oh, yes, of course, Your Honor. Thank you very much. Okay. Great. We'll hear from counsel for the government. Good morning, Your Honor. Jose Zolo Ancipieta, Deputy Attorney General for Defendants. May it please the Court, this case raises two distinct claims, excessive force and equal protection, but it's important to keep in mind the undisputed facts because the district court ruled that based on the undisputed facts defendants were entitled to qualified immunity on the excessive force claim and to summary judgment on the equal protection claim. Counsel, Judge Gould with a question. What exactly is the undisputed facts, the undisputed fact that's strong enough to warrant pepper spraying? The undisputed facts, Your Honor. Because if he really just put his fingers on the rim of the food court, that hardly seems like that would be a justification. And if they didn't warn him, they're going against his prison policy. And I think that's what his testimony or statement was, that they didn't warn him. That's correct, Your Honor. And I think if the Court looks at that particular fact in isolation, then a plaintiff has a stronger case. We don't necessarily concede that the force was excessive, but that was not the only fact. What happened was that the defendants were feeding a number of different inmates, that Defendant Morales, Officer Morales, had fed every single inmate who was a Muslim and who had permission for a vegetarian meal, approached Mr. Furness's cell, offered him a non-vegetarian meal because he did not know that he was authorized to receive a vegetarian meal. Mr. Furness said he was entitled to a vegetarian meal. Officer Morales walked away to try to confirm this, came back and told Mr. Furness, you are not authorized for this, you take this meal, or I'll mark you down as refusing. There's no dispute about these facts. Mr. Furness did not do that, and he did not go back to his cell and say, oh, I have a Crono authorizing me to take a vegetarian meal. Instead, what he did is he went towards the food court, and there's some dispute about how he did this. According to Mr. Furness, he only put his hand on the handcuff port. Now, Officer Morales was holding a large tray in one hand and was trying to work with the handcuff port with the other one. Under these circumstances, and knowing the danger that inmates in level 4 high security institutions pose, and knowing that inmates who take control of the handcuff port are a danger to the institution because they can throw any type of items, that, on that basis, if the Court looks at the totality of the circumstances, it was appropriate for the district court to grant summary judgment. Although the Court did not do that. Kennedy, I'm sorry. I finished answering that question, because I still want to know about whether the one minute, one thing to spray him and get him the bag off. But the Mr. Furness says that they sprayed him for a full minute, and I assume that's a question of fact, isn't it? Yes, Your Honor. If I may, I just wanted to add one more point. I'm sorry. Yes, please. Judge Gould, and I just remind the Court that since the district court ruled for defendants on qualified immunity, at the qualified immunity level, the Court has to look at the situation from the perspective of the officer. In Marquez v. Gutierrez, the Court said the scenario may look different when gauged against a 2020 vision of hindsight, but we must look at the situation as a reasonable officer in defendant's position could have perceived it. So given the totality of the circumstances, I submit to the Court that Judge Chesney got it right in granting defendants qualified immunity. In terms of Judge Sachs' question, the one minute, first of all, it's questionable whether Mr. Furness even has the requisite foundation to say how long the pepper spraying lasted. Now, let's say for – because at his deposition, his testimony was equivocal. Let's say that the pepper spray lasted for one minute, as he said. The undisputed fact was that the officers were telling Mr. Furness, he admitted at his deposition, that they were telling him to go ahead and remove his hand from the handcuff port, and that the officers stopped pepper spraying him as soon as he removed his hand from the handcuff port. Is that part of his version of the events also, that it took him a minute before he took his hands off the – The one minute is kind of equivocal in terms of his testimony. It's undisputed. It was Furness' own testimony, deposition testimony, that when the officer – when he took his hand off the handcuff port, that the officers stopped pepper spraying him. And I can go ahead and find a cite in the record. No, no, no. It's there. But it's in the exorcist record. If I understand correctly, Furness alleges that he was not warned. That is a disputed fact, is it not? That is a disputed fact. That's what is – that is the factor that determines whether or not prison policy was followed, right? Arguably, Your Honor, yes. Not arguably. Either they gave him a warning or they didn't give him a warning. Prison policy said they had to give him a warning, right? Right. So that's a disputed fact. And you have an issue of whether he had his hands there or he didn't have his hands there. No, there's no dispute. Mr. Furness conceded his deposition that he put his hand at the handcuff port. I know, but he said he took it off, and he was down below the port when he was being sprayed, right? No, Your Honor. His testimony was that he put his hand in the handcuff port to try to talk to Officer Soto down the tier, and that when Officer Morales reacted by pepper-spraying him, he put both hands up to try to block, according to his version of the case. Hands up. Yes. Not on the – On the – through the handcuff port. That was his deposition testimony. To bar the pepper spray from coming in through the port. That's what his explanation was for doing that. But it's also undisputed that as soon as he took his hands off the handcuff port, the officer stopped pepper-spraying him. So I submit to the Court that looking at all these facts together, from the perspective of Officer Morales rather than from Furness's perspective, which this Court must do under the Qualified Immunity Case Law, Officer Morales was justified, and Officer Solomon used only the requisite force necessary to regain control of the handcuff port. So really what you're talking about in the Qualified Immunity is pretty two-pronged. Number one, did these two officers believe – have a reasonable belief they were following the law, including the prison guidelines? If they didn't give a warning, they weren't following the law, were they? If they didn't give a warning, Your Honor, then that would go into the Hudson v. McMillan factors, whether the use of force is reasonable. But it certainly affects the determination of whether ultimately they're entitled to qualified immunity, right? Taken together with all the other factors, yes, Your Honor. Okay. And another one is whether or not the pepper-spraying was done to inflict pain, basically sadistically. Sadistic and malicious. That is the law. That's what the officers are supposedly aware of. And in this case, you have a man who has sustained some pretty severe burns. He had his hands on the port. Get that. No dispute about what happened on that thing. But the reality is, isn't that at least arguably a question of fact, whether they sprayed this man at a distance and at a length to inflict pain, basically sadistic pain? I'm not saying that's what happened. I'm just saying we're talking about a summary judgment here, and we're talking about whether, on the basis of a summary judgment material, whether these officers are entitled to qualified immunity. They may ultimately be just that. But if there are material issues of fact, don't we have to send this back to the district court for a hearing to make a determination about these issues on qualified immunity? It's just not a given, given those two disputed facts that I mentioned, that they're entitled to. Well, in terms of the prison policy, the case law says that the violation of State law cannot state a violation of 1983. So therefore, I for sure, I neither would a violation of a prison policy. But if this ---- Wait a minute. Let me be sure I understand. You're saying that if these officers ignored prison policy about warning, that that has no impact on their entitlement to qualified immunity? No, Your Honor. That's not what I'm saying. I'm saying that the fact that they might not have followed the policy to the letter, it does not show that they're not entitled to qualified immunity. Because under qualified immunity, the court has to look at not whether the officers were reasonable, but the case law says if an officer acts reasonably but mistakenly, that still entitles them to qualified immunity. And I agree with that. But, again, you don't decide that on summary judgment, do you? I mean, they may ultimately be correct about that. But the point is we decide things on summary judgment when, if you take the version in this case coming from Mr. Furman, looking at ---- or Vernis, rather, and looking at the law, the records, and so on, it appears that there are differences of opinion. There are material facts involved, whether or not a warning was given, whether they ---- what the officers knew about this and the like. It's really not what the ultimate outcome may be. I have no idea what that might be. I'm just troubled by the fact that this was done at the summary judgment stage. I understand that, Your Honor, but the whole purpose of qualified immunity is to prevent prison officials from having to go to trial. If the officers are entitled to it, you're absolutely right. But if you have disputed issues of material fact, they may not yet be entitled to it. Well, I submit to the Court that the best summation of the facts that entitled defendants to qualified immunity is how the district court framed this issue, which was a reasonable officer in defendant's position who had received training regarding serious safety concerns raised by inmates who take control of food ports could have mistakenly but reasonably perceived that when plaintiff held open the food port after being directed by Morales to take a breakfast trace but refusing to do so, he posed a threat to the safety and security of the institution. Okay. Thank you very much for your argument. We'll hear our rebuttal now. Thank you, Your Honor. From closing counsel. Thank you, Your Honor. I'd like to just first note that the language there quoted by Mr. Zeldon-Zepeda was the language in the district court's opinion which wrongly assumed that Mr. Furness was holding open the food port, which would be the defendant's version of events here, and that's exactly the portion of the opinion where the district court wrongly granted qualified immunity because it assumed the version of events as the officers testified that they occurred as opposed to how Mr. Furness testified that they occurred. I'd also like to address the Marquez v. Gutierrez case, which was also just raised there in the context of whether or not one of these correctional officers could have reasonably perceived Mr. Furness to have been posing any threat here. There were no perceptual ambiguities like those that existed in the Marquez case there. The officer was like 360 feet away viewing a prison scuffle when the officer made the decision to shoot at an inmate. Here, Officer Morales was immediately in front of Mr. Furness's cell. You can see from the photographs it has these two big windows. It had this big open food port. It was brightly lit. Mr. Furness was right there. There were no perceptual ambiguities that a reasonable officer in Officer Morales or Sullivan's position could have seen that Mr. Furness was violating prison policies or otherwise acting in a threatening manner that would have justified the use of force. There's no evidence in the record here, you know, consistent with Mr. Furness's version of events that would support that inference in the defendant's appellee's favor here. So, therefore, there would be no reasonable inference that he posed any threat, and we believe that qualified immunity and summary judgment were wrongly granted to the officers in this case. I'd also like to maybe answer some of the questions that I heard about, again, the specifics about what Mr. Furness said about the food port situation, about his hands on it. We would love to hear your argument, but your time is gone. Oh, well, thank you very much, Your Honor. We appreciate the fact that you both did a good job on your briefs, which, of course, is most helpful, and we appreciate your fine oral arguments on both counts, so thank you. Thank you. The case just argued is submitted.
judges: Sack, Gould, Smith